IN THE MATTER OF THE ESTATE OF GEORGE DELAPORTE, DECEASED.

[No. 9041; January 14, 1913.]

**Marriage.—A Common-law Marriage, as Well as One Entered into** under regular forms and ceremonies, does not create the relation of husband and wife between a man and a woman already having wife and a husband living and not divorced.

Application for family allowance by Adele Brun Delaporte, as widow of deceased.

Andros & Hengstler, Golden W. Bell and Clarence A. Shuey, for applicant.

Joseph J. Dunne, for Helen Doherty, executrix.

Thomas E. Haven, for certain legatees.

COFFEY, J. Petitioner asserts that about October, 1885, she and decedent mutually promised and agreed at the city of New York and in the state of that name, and then and there contracted to be joined in lawful wedlock in accordance with the laws of that state, and to be thereafter, to wit, on the sixteenth day of December, 1885, married according to the laws of that state and to continue thereafter for life in the personal relation of husband and wife, and to mutually sustain, bear and assume toward each other, and the world at large, until the death of either one of them, marital rights, duties and obligations as husband and wife.

Petitioner further asserts that on the said sixteenth day of December, 1885, in New York and under and by virtue of the laws of that state, the petitioner and decedent being then and there of age and competent to enter into marital relations, publicly and in the presence of witnesses then and there declared their said agreement to be and become from and after that time husband and wife, and were married in the presence of said witnesses, and by virtue of said ceremony and mutual agreement immediately thereafter assumed marital relations, and became and were husband and wife and were known as such in their business and social relations with the world, and from that time on and continuously for more than fourteen years petitioner and decedent resided, lived and cohabited together as husband and wife and mutually assumed, bore and sustained toward each other and the world at large that relation. It is further asserted that as such husband and wife they lived in such manner and were known to the world as Mr. and Mrs. George Delaporte in New York City from December 16, 1885, until about January 21, 1886, when they went to the city of Mexico, where they lived in like manner and were so known until about June, 1887; that thereafter they returned to the United States, and lived for a short time in New York City, in the house of the father and mother of decedent, and were by them treated as husband and wife; thence to Chicago, where they were so known until about February, 1888, in which month they removed to San Francisco where they were likewise known as husband and wife to all persons with whom they came in contact as husband

and wife under the name of Mr. and Mrs. George Delaporte until about 1897; that in this year, 1897, they removed to Berkeley, Alameda county, and lived and cohabited in said town as husband and wife under the said name until about 1900, and that the father of decedent lived in the house occupied by them as a member of their family for about eight months and that he treated and recognized petitioner as his daughter by marriage, and that at all times the sisters and brothers of decedent treated and addressed petitioner 'as sister and as the wife of decedent. She further asserted that during the period from December 16, 1885, petitioner faithfully performed all her marital duties and obligations, and contributed the greater part of the support of herself and decedent by diligent and successful application to her trade as a dressmaker. It is further asserted that before the said sixteenth day of December, 1885, and in consideration of the promise of said decedent to marry her, she advanced to him the money which enabled him to learn the trade which he thereafter pursued as his life occupation. It is asserted further that while living with him as husband and wife she conducted dressmaking parlors under the name of Madame Delaporte until about 1897, until she became totally incapacitated to practice her profession by reason of failure of eyesight and she became and is totally blind. Subsequently, about the year 1900, while living and cohabiting with decedent in Berkeley as his wife, petitioner asserts, she was abandoned and deserted by him, and thereafter he neglected and refused to contribute to her support and maintenance and thereby she was left wholly destitute. She asserts that said abandonment and desertion were without fault or justification on her part and she was always willing and desirous of performing her obligations and continuing her conjugal relations, and she claims, finally, that she was from the beginning in 1885 until the day of his death the lawful wife of decedent and entitled to call upon him for maintenance and support. There was no issue of this relation and petitioner therefore claims to be entitled to an allowance adequate to her situation and status and the circumstances of the estate.

!The answer to this application comprises over fifteen pages typewritten and denies specifically every material allegation of the petition; and avers that on November 1, 1900, the petitioner, under the name of "Adele Brun," applied for administration to the "King's Daughters' Home for Incurables" in Oakland, and was admitted to that institution, and paid therefor five hundred dollars and ever since has been and is now therein. The application is annexed to the answer.

The respondent executrix for a further, separate, distinct and independent defense of this application, avers that at the time of the alleged contract of marriage between petitioner and decedent, to wit, the year 1885, the applicant then being in the city and state of New York, was wholly incompetent. incapable and without legal capacity to enter into marital relations with or to marry any person and in particular with the decedent; and respondent avers that during the whole of the year 1885, and more particularly on the sixteenth day of December of that year, she was the wife of one Claude Brun, to whom she was married in the month of October, 1864, in the Church of San Lorenzo, in the city of Rome, Italy, which marriage was never dissolved and still subsists, and that at the time of her asserted marriage to decedent she could not legally have contracted a union with decedent, because under the law both of Italy and New York such an alliance would be bigamous and void.

It is further answered that decedent himself was at the times, and during the period indicated, entirely incompetent to engage in a connubial contract because he was already a married man, the husband of one Marie Carbon, and that such relation was in full force, validity and effect at the time which petitioner claims she intermarried with decedent.

For a final answer to this application, respondent sets up an instrument in writing purporting to be a release of all obligations that she might have against decedent or his estate, which document was witnessed and acknowledged on September 25, 1900, and contains this declaration:

"I hereby solemnly declare and certify that I never was and am not now, in any manner or form, either married to or the wife of the aforesaid George Delaporte."

This document began: "I Adele Brun of the City of Oakland" and was subscribed "Adele Brun," and witnessed by J. H. Smith, W. C. Moran, Mrs. Anna Wright, Mrs. Minnie Juillerat, and acknowledged October 24, 1900, before W. C. Moran, notary public for Alameda county.

Concerning this document and its execution, criticism has been made because of her condition; she was in advanced age and blind, but she was not totally destitute of counsel, and if she had any claims upon the decedent she had opportunity of advice; and she was advised, as appears from the evidence; she had independent advice; it was at arms-length; it appears that she had her own attorney; but whether or not she was constrained by her circumstances to execute this release, which has all the formal appearance of freedom of action, this case is not dependent upon that instrument. Her own testimony is sufficient to estop her claim to an allowance.; it is a conclusive admission which cannot be denied or controverted; when she entered into this alliance with decedent in 1885 in New York she was a woman of over forty years of age, no longer a maiden, but, according to her own statement, a married woman by a ceremony solemnized twenty-one years before in a church which recognized no dissolubility save by death and in a country which indulges no presumption of legal decease. The man himself was much her junior, nearly twenty years younger, but neither was competent to marry by the law of the land in which they were living, and each was under the statutes of the state, liable to prosecution for bigamy, if either attempted marriage. It is an impossible case. There is an absolute legal impossibility of marriage; it lacks the essential and indispensable ingredient of matrimony. The element of legal capacity must coexist with consent and connubiation; and there is no such element in this case, and, therefore, no right to a family allowance.

Application denied.

---

*As to Common-law Marriages,* see note in 3 Cof. Prob. Dec. 196.